Ruffin, C. J.
 

 Of cases of this kind, when instituted on behalf of the State by the Attorney General, original jurisdiction is conferred by the statute on this Court; and the' proceedings may be by bill, or by information in the nature of a bill in equity, and arc to be carried on according to the
 
 *234
 
 course of the Court of equity. The grounds, on which grants may be vacated or repealed, are, that they were is - sued against law, or were obtained by fraud, surprise, or false suggestion. No one can hesitate to say, that the case in the information, if true, furnishes grounds for annulling the grant. The entry was for two hundred acres and the enterer procured a survey to be made purporting to contain that quantity, and describing the lines to be of lengths that would include no more. There was nothing, then, upon the face of the papers transmitted to the Secretary of State, which would raise a suspicion of any unfairness or falsehood in the description therein given of the land — to which description the grant was necessarily to conform. (But, by artfully and deceitfully calling for the natural objects of a river, the top and end of a mountain, and a dividing ridge between two creeks, as parts of the boundaries of the land, the distances called for are, by legal construction, overruled, and the lines are to terminate at, or go along the natural objects; and thus a grant was obtained, and intended to be obtained, for three thousand acres, professing all the while to be for 200 only. And all this false description as to the length of the lines, and false suggestions and affirmations as to the quantity of land, were to the intent and purpose of cheating the public revenue out of the price of the difference in the quantities; that is, 2800 acres. The fraud on the Slate is palpable, whereby the party knowingly got a grant for a large tract of land by paying one fifteenth only of the price required by law. It is clear that a grant thus obtained ought not to be of force, but be de-creedito be brought in, cancelled, and annulled, and the en-rolment thereof cancelled.
 

 A doubt, however, has been suggested, whether the truth of the case set out in the information is established. The doubt is founded on a practice, which is said to have prevailed oflate in some parts of the State, requiring a plaintiff to prove his case on the hearing, notwithstanding the
 
 *235
 
 bill may have been taken
 
 pro confesso
 
 and the cause set down thereon. The practice cannot be of long standing, and must be of limited extent; and there seems to be no foundation for it. The experience of the elder members of the Court is entirely to the contrary on the circuits; and it certainly never prevailed in this Court. Not to mention other cases, it was held, or plainly assumed, in
 
 Andrews
 
 v.
 
 Lee,
 
 1 Dev and Batt. Eq. 318, and
 
 McCaskill
 
 v.
 
 McBride, 2
 
 Ire. Eq. 53, that an order taking a bill
 
 pro confesso
 
 dispensed with proof on the hearing, or, rather, put the case into a condition, in which there was no opportunity to get proof extrinsic of the bill. Prior to any alteration by statute, the appearance of a defendant, though served with a subpoena, was indispensable to any relief to the plaintiff, because without it the Court had not jurisdiction to decree
 
 in personam.
 
 Yarious rules of Court and acts of parliament were made to’enforce appearance, or to authorise an entry of it by an officer of the Court, even against the defendants will. But, it appears from the case of
 
 Hawkins
 
 v.
 
 Crook,
 
 2 Pr. Wms. 556, that, when an appearance was thus entered, if the defendant still withstood process of contempt, and refused to answer, the plaintiff was anciently put to prove the substance of his bill on the hearing. It “ further appears there, that, prior to that case, the practice was established of setting down a cause, when the defendant would not-answer after appearance, and upon the hearing taking the bill
 
 pro confesso
 
 and decreeing thereon. The consequence of taking the bill
 
 pro confesso.
 
 is there’ stated, to be, that every allegation in the bill is considered as confessed by the defendant. On that ground the Reporter,who was the defendant’s counsel, calls it an extraordinary-consequence, “ as it takes every thing
 
 pro confesso,
 
 which the fruitful fancy of Counsel could invent, suggest, and'put-, into a bill, and makes all pass for truth.” Yet hé admits, that the practice was firmly established, and that it was founded-on the sound reason,, that without thé order th&
 
 *236
 
 plaintiff would be without
 
 remedy, sime,
 
 b}^
 
 the
 
 defendant’s contumacy in refusing to answer, the plaintiff could not join issue and was thereby deprived of the opportunity of examining witnesses, The necessity for the rule is thus rendered clear, and the effect of it must, obviously, be that stated: which is, taking the matter of the bill to be true, as if the same were confessed in an answer. The terms, “ taking the bill
 
 pro confesso,” per se
 
 carry that sense; and, when it is perceived that in the state, in which the cause is hereby placed, the plaintiff cannot proceed to proofs by witnesses, the conclusion is clear, that the truth of the bill is to be taken as admitted on ihe hearing, as if an answer confessed it in the term of the bill. It was in that sense those words were used in Stat 5 Geo. II, which first allowed a bill to be taken
 
 pro confesso
 
 against an abscond-, ing defendant, on whom process could not be served. The statement of the bill was assumed to be tsue, and a decree made accordingly. Smith’s Ch. Pr. 153. The same terms are to be found in our acts of 1782 and 1787 regulating the proceedings against defendants, who do not answer, whether served with process, or absconding or residing abroad; and there cannot be a doubt, that they were used and are to be received in the same sense. The latter'act contemplates, that the hearing may be immediately after the order taking the bill
 
 pro confesso,
 
 and provides that the Court shall “ decree thereupon,” that is, upon the bill and order, on the security of the bond of the plaintiff for restitution, if decreed on a rehearing; and the act of 1782 requires, that, upon taking the bill
 
 pro confesso,
 
 the cause shall be set down to be heard
 
 ex parte
 
 at the ensuing term, with a .proviso, that, upon a proper ground, shown within the first three days of the next term, the preceding orders, may be discharged, and the defendant admitted to a full defence. The acts of 1762, ch. 79, and 1806, ch. 703, contain similar enactments respecting petitions in the Courts of law' for legacies and distributive shares. And all those provi
 
 *237
 
 sions distinctly evince, that the cause is not open for proofs, so far, at least, as concerns the decree to be pronounced on the hearing; .and the case is thus brought by the statute within the very reason assigned in
 
 Hawkins
 
 v.
 
 Crook
 
 for the rule originally. Therefore the decree is to be on the bill, upon the supposition that the matter thereof is true by the confession of the defendant. It seems probable, that the recent local practice to the contrary, which has been mentioned to us, has arisen from the misapplication to this case of the rule, that • the matter in the bill, which, though not expressly denied, is not admitted in the answer, must be proved. But the distinction between the cases is plain. For, without insisting on the general traverse usually inserted in the conclusion of the answer, there is this marked difference, that, as to those parts of the bill on which the answer is silent, the bill is not taken
 
 pro confesso.
 
 A bill must be taken
 
 pro confesso
 
 throughout, or not at all.— Hence, an answer, however insufficient, puts the plaintiff to the necessity of proving his case, either by witnesses, or by obtaining a fuller answer on exceptions. But that has no application to the case, in which, in default of any answer, or appearance, the bill is expressly taken
 
 pro confesso
 
 —whereby the plaintiff is allowed to insist on a decree on the bill as being all true. The consequences are, that, if the bill, though confessed, do not entitle the plaintiff to a decree, it must be dismissed; but if it contain matter for some decree for the plaintiff, it will be made. Its nature, however, will depend upon the consideration, whether there be or be not enough in the bill to show the precise extent of the relief which the plaintiff ought to have. If, for example, the bill be for specific performance of a contract for the salo of land, and it is not so described in the contract or bill as to identify it by such metes and bounds as ought to be inserted in the conveyance to be decreed, then upon the hearing there would be only a declaration of the opinion of the Court, that it was fit the contract should be spe
 
 *238
 
 cifically performed, and, because the particular lines of the land did not appear, a survey and enquiry would be directed thereon; and, of course, the party might ofFer proof touching that matter. So it would bé likewise in bills for redemption, to settle partnerships, and for accounts and payment of legacies, distributive shares, and the like. But if the bill contains matter, which, at all events, entitles the plaintiff to a decree to the full extent of the prayer, and it is apparent, that, taking the bill to be true, the result of no enquiry could vary the terms of the decree, then it is obvious, that the decree on the hearing must be the final decree. Such is the present case. The information h^s but one purpose; that of vacating the grant. It asks for no account or other relief; and upon it there can be but one of two decrees under any circumstances ; that is to dismiss it, or to vacate the grant. Therefore it is incumbent on the Court now to declare, that the grant was unduly obtained, as before mentioned, and to decree definitively, that it be vacated and annulled, according to-the statute, and that the defendant Carver pay the costs.
 

 Ter Curiam. Decree according!}'.
 

 The following decree, drawn by the Court, was then entered :
 

 August 21st, 1851. This cause coming on to be heard on the information filed on behalf of the State by the Attorney General, the exhibits, and the former orders, and argument of Counsel on behalf of the State, and the whole matter being.considered by the Court: and it appearing in and by the information and exhibits, as therein stated, that on the 29th day of June, 1831, the defendant, Adien Carver, made a.n entry of two hundred aeres of land lying in Burke county, on the waters of the Toe River, under Humpback Mountain, and adjoining his'own land, and that the said Adien afterwards obtained a warrant thereon, and procured
 
 *239
 
 one David Chandler, a deputy of the surveyor of said county, to make out plats and certificates of survey, purporting to1 be upon the said entry and to bé a survey of a tract of land containing two hundred acres, with the following butts and bounds, that is to say, beginning on a white oák starid-ing on the east bank of Toe River, and rim's east two hundred poles tó a stake on the' top of Humpback Mountain, thence north with the Mountain two hundred and sixty poles to a stake oh the bluff end of the Mountain, thence west down the léáding ridge- between Brushy Creek and Laurel Creek two hundred poles to a stake on the bán'k of the river, thence- down the meanders of the river to th'é beginning, and transmit the said warrant,- plats, and survey to the office of the Secretary of State; and thát oh the 12th day of December, 1832, the said Adien Carver paid into the Public Treasury the sum of ten dollars as and for the purchase money due to the State for the said tract of land and'then obtained a grant to be issued to him, the said Carver, for the said tract of land, described therein by the aforesaid lines and corners, and as containing two hundred acres, and that the said grant bears dáte the day and yeah last aforesaid, and is numbered 5601: and- it further appearing thereby, that the distances between the several-natural objects, which are described in the said survey and grant aS ' corners of the said tract of land, are'such, that, each of the four lines thereof exceeds two miles in' length, instead of the respective lengths in the said survey and grant' mentioned, and.that, by reason thereof, the said tract, of land, so granted to the said Carver, contains-three thousand acres, instead of two. hundred acres; as- mentioned in the said grant: and it further appearing'thereby, that the-said Adien and the said Chandler-well knew the true lengths of the said lines, and that the said Adien, by collusion and fraud, procured the said Chandler corruptly arid contrary to his duty as a deputy surveyor to make an untrue plat and certificate-by giving in the said plats and certificates, as
 
 *240
 
 made and transmitted by him as aforesaid, a false description of the land as aforesaid, as to the lengths of the said lines and falsely stating the quantity therein contained, to the corrupt and fraudulent intent, that, by such fraudulent description, suggestions and affirmations, the said Carver should obtain a grant from the State for a much larger quantity, namely, three thousand acres of land, included in the said survey, without making due payment therefor or any payment whatever, in respect of two thousand eight hundred acres, part thereof: and it further appearing thereby, that, in pursuance of said corrupt and fraudulent intent, and ;by means of said false suggestions, the said Carver did obtain the said grant to be issued to him as aforesaid, covering the three thousand acres of land instead of the smaller quantity of two hundred acres, to which alone he was justly entitled : and it further appearing thereby, that for the said causes the Attorney General on behalf of the St$te prays that the said grant so obtained by the said Adien, Carver, may be decreed by this Court to be vacated and repealed: and it appearing
 
 to
 
 the Court, that at the last term thereof, the information was taken pro
 
 confesso
 
 against both of the defendants: wherefore, and because all the matters, appearing as aforesaid in and by the information, are thus taken to be true as if the same were particularly confessed by the defendants, it is declared by the Court,
 
 that
 
 the said Adien Carver did procure the said grant to be issued and made to him, the said Carver, by false suggestions, surprise and fraud, as aforesaid: and that in the opinion of the Court the said grant ought, for that c.ause, to be repealed and vacated, as prayed in' the information : and the Court doth thereupon ordet, adjudge and decree, that the said grant to the said Adien Cafver, numbered 5601, and bearing date the
 
 12th
 
 day of December, 1832, for the ■said'¡tract, ofiand herein before described, be,-and the same is.hereby vacated, repealed, rescinded and annulled : and that the defendants, after service of a-copy of this decree
 
 *241
 
 twenty days before the next term, do bring the said grant into this Court at the next term to be cancelled; and that the defendant, Adien Carver, do pay the costs of this suit to be taxed by the Clerk : and the Court, in obedience to the Statute in such cases made and provided, doth further order, that, upon a copy of the information, orders and decrees, thereon made, being filed by the Attorney General on behalf of the State in the office of the Secretary of State*, the said Secretary of State shall record the same in the book by him kept for that purpose, and shall also note in the margin of the original record of said grant the rendering of this decree with a reference to the said record thereof in his office, and shall also cancel the enrolment of the said grant in his office by writing across the same the words: “ Cancelled by virtue of the decree of the Supreme Court/’